IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| TIMOTHY GORDON, | : | |
|---|---|---|
| Plaintiff | : | Civil Case Number |
| | : | |
| v. | : | |
| | : | |
| PPL CORPORATION | : | NO. 10-CV-03420-LS |
| Defendant | : | |

MEMORANDUM

**Stengel, J.** April 6, 2011

Timothy Gordon works at PPL Corporation and alleges PPL discriminated against him because of his age and retaliated against him because he filed a Charge of Discrimination with the Equal Employment Opportunity Commission. For the reasons set forth below, I will grant PPL's motion to dismiss the second amended complaint.

I. BACKGROUND

PPL Corporation hired Timothy Gordon on June 12, 1978.[1] His most recent position with PPL is as a lineman leader with the electric utilities/distribution division. See Second Amended Compl. at ¶ 4-5. He had an exemplary performance record. Id. at ¶ 6.

In May or June of 2007, Mr. Gordon and his co-workers attended a meeting with the new vice president of electric utilities, John Fogarty. See Second Amended Compl. at ¶ 7. The company was under review by the Public Utilities Commission because of

---

[1] Second Amended Compl. at ¶ 3, Gordon v. PPL Corporation, No. 10-3420 (E.D. Pa. filed Oct. 7, 2010).

reliability problems.  Id. at ¶ 10.  Mr. Fogarty sought input to turn the division around, and Mr. Gordon said he could help.  Id. at ¶ 8.  Mr. Gordon met with Mr. Fogarty and was asked to provide input on the division's reliability.  Id. at 21.  Mr. Gordon and Mr. Fogarty also discussed ideas on how PPL's business could be improved.  Id.  Mr. Fogarty told Mr. Gordon to create a new job description.  Id. at ¶ 9.  Mr. Gordon created a job description entitled "Reliability Control Specialist."  Id. at ¶ 10.

The second amended complaint states: "The plaintiff believes, and therefore avers, that the [Public Utility Commission's] investigation may have been the motivation for creating the new job called Reliability Control Engineer.[2]  The duties of said job were the ones created by [Mr. Gordon]."  Second Amended Compl. at ¶ 11.

Mr. Fogarty contacted Mr. Gordon and asked Mr. Gordon to work under Dave Rodak,[3] Area Manager at the Lehigh Service Center.  Id. at ¶ 12.  Mr. Gordon was to be a problem solver and a liaison between departments.  Id. at ¶ 13.  Mr. Fogarty told Mr. Gordon this would be a six-month position, which possibly would become permanent.  Id. at ¶ 13.  Mr. Gordon began the new position in October 2007.  Id. at ¶ 14.

Mr. Gordon angered union and management personnel in the new position because he investigated the causes of PPL's slow response time.  See Second Amended Compl. at

---

[2] Paragraph 10 of the second amended complaint states "[Mr. Gordon] created a job description that was called Reliability Control Specialist."  Paragraph 11 states the new job was "called Reliability Control Engineer."

[3] The Second Amended Complaint stated Mr. Gordon was to work under "Dave Rodale."  PPL clarified that Mr. Gordon was to work under "Dave Rodak."

¶ 15. He angered his supervisors, Steve Clock and Mike Mohr. Id. Mr. Gordon had a secret meeting with the Public Utilities Commission regarding PPL's lack of reliability during storms. Id. at ¶ 26. Mr. Gordon informed his managers of this meeting.

The complaint states Mr. Gordon "believes, and therefore avers, that [PPL's] management was using him to get inside information from the Union, to the detriment of the Union." See Second Amended Compl. at ¶ 28. It also states Mr. Gordon "believes, and therefore avers, that [PPL's] management and the Union believes that he was meddling in their affairs as the Plaintiff was responsible for investigating issues in his own department." See Second Amended Compl. at ¶ 29. Mr. Gordon believes he was not able to fully investigate the department because of the issues with management and with the Union. Id. at ¶ 30.

After four months in the new position, Mr. Gordon met with PPL's upper management to discuss whether his temporary position could become permanent. Id. at ¶ 24. Mr. Gordon was informed he would have to work his way up. Id. at ¶ 24. Mr. Gordon decided he would like to return to his prior position as a lineman leader. Id. at ¶ 31.

When Mr. Gordon returned to his position as a lineman leader, the supervisors were not happy with him and "fabricated a story to shut him up and get rid of him." See Second Amended Compl. at ¶ 16. On February 15, 2008, at 9:00 a.m., Jim Caffany, the Chief Steward, told Mr. Gordon there would be a meeting about charges against him. Id.

at ¶ 17. Mr. Caffany informed Mr. Gordon that four union employees and two managers felt threatened for their lives. Id. at ¶ 18. Mr. Gordon was told not to say anything at the meeting. Id. at ¶¶ 20, 37.

Mr. Gordon was removed from the Bethlehem Service Center, where he had worked prior to his temporary assignment, and was told he had a day off with pay. See Second Amended Compl. at ¶ 33. Id. On February 15, 2008, PPL assigned Mr. Gordon to work as a lineman leader at its Lehigh Service Center because the Union and Management stated they were threatened by Mr. Gordon's investigation. See Second Amended Compl. at ¶ 32. Mr. Gordon was told to report to the Lehigh Service Center the following Monday. Id. at ¶¶ 17, 19. Mr. Gordon protested the job transfer. Id. at ¶ 35.

PPL informed Mr. Gordon that he was to report to PPL's psychiatrist on February 15, 2008. See Second Amended Compl. at ¶ 38. Mr. Gordon met with the psychiatrist and was told to report to her once a week for three months. Id. at ¶ 41.

Mr. Gordon complained that it was "a set up to shut him up and get rid of him." See Second Amended Compl. at ¶ 20. Mr. Gordon "believes . . . that because of threats and harassment from the Union and [PPL's] management team he was only permitted to work alone." Id. at ¶ 34. He was told he had to work by himself and could not go on call-outs to customers. See Second Amended Compl. at ¶ 35. On the evening of February 15, 2008, however, he was called out to report an incident and worked with four trainees to correct the problem. Id. at ¶ 42.

In the spring of 2008, Mr. Gordon spoke with officials from the Occupational Safety & Health Administration regarding PPL practices that Mr. Gordon felt violated OSHA standards. See Second Amended Compl. at ¶ 39. OSHA said it would conduct an investigation but Mr. Gordon is not aware of an OSHA investigation. Id. at ¶ 40.

On August 11, 2008, Mr. Gordon filed a Charge of Discrimination with the Equal Employment Opportunity Commission and with the Pennsylvania Human Relations Commission. See Second Amended Complaint at ¶ 46. On March 17, 2010, Mr. Gordon received a Notice of a Right to Sue from the EEOC. Id. at ¶ 47.

In March 2010, before receipt of his performance evaluation, Mr. Gordon spoke with his immediate supervisor, Michael Mohr. See Second Amended Compl. at ¶ 48. Mr. Mohr said his performance was exceptional. Id. at ¶ 48. When Mr. Gordon received his evaluation, however, his performance was rated substandard. Id. at ¶ 49. When Mr. Gordon spoke with Mr. Mohr about the evaluation, Mr. Mohr said he had not drafted the evaluation and did not believe the evaluation was a correct evaluation of Mr. Gordon's work. Id. at ¶¶ 50-51. Mr. Gordon refused to sign the evaluation.

Mr. Gordon's second amended complaint alleges a violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. Section 621, et seq., claims unlawful retaliation, and alleges a violation of the Pennsylvania Human Relations Act, 43 P.S. Section 951, et seq. PPL filed a motion to dismiss the second amended complaint in its entirety.

II.     STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks Cnty. Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 564. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Se. Pa. Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)). The claim must contain enough factual matters to suggest the required

elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

Fowler, 578 F.3d at 210, provides a two-part test to determine whether a claim survives a motion to dismiss. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11 (quoting Iqbal, 129 S.Ct. at 1949). "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. (quoting Iqbal, 129 S.Ct. at 1950). The plaintiff must show "the allegations of his or her complaints are plausible." Fowler, 578 F.3d at 211 (quoting Phillips, 515 F.3d at 234-35). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Id. (quoting Iqbal, 129 S.Ct. at 1949). This "'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Fowler, 578 F.3d at 211 (quoting Iqbal, 129 S.Ct. at 1949).

III. DISCUSSION

A. Age Discrimination

The Age Discrimination in Employment Act provides: "It shall be unlawful for

an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).[4] To establish a prima facie case of age discrimination, the plaintiff must establish he: "(1) was over forty years old at the time of the adverse employment decision; (2) is qualified for the position in question; (3) suffered from an adverse employment decision; and (4) that his employer replaced him with someone sufficiently younger to permit a reasonable inference of age discrimination." Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005); accord Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 300-301 (3d Cir. 2004); Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004). "[A] plaintiff can also satisfy the fourth element . . . by 'showing that similarly situated non-protected employees were treated more favorably.'" Wilson v. N. Westmoreland Career and Tech. Ctr., 2011 WL 772881, at *9 (W.D. Pa. Feb. 28, 2011) (quoting Clayton v. Meijer, Inc.,

---

[4] The Pennsylvania Human Relations Act also prohibits age discrimination. The PHRA provides:

> It shall be an unlawful discriminatory practice . . . [f]or any employer because of . . . age . . . of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

43 P.S. § 955(a). "The same legal standard applies to both the ADEA and the PHRA and therefore it is proper to address them collectively." Kautz v. Met-Pro Corp., 412 F.3d 463, 466 n.1 (3d Cir. 2005)

8

281 F.3d 605, 610 (6th Cir. 2002)). An adverse employment action under Title VII is "an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) (quoting Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001)).

Mr. Gordon's complaint fails to allege sufficient facts to suggest the required elements of the claims or to "raise a reasonable expectation that discovery will reveal evidence of" the elements of the claims. Mr. Gordon is over forty years old and is qualified for the position, but no allegations in the complaint suggest that he was discriminated against because of his age or that he suffered an adverse employment action. The alleged adverse actions are the creation of the temporary job, Mr. Gordon's transfer to the Lehigh Service Center,[5] and the performance evaluation.

Mr. Gordon presents no facts to support his allegation that the temporary position was created to force him to quit because of his age. Mr. Gordon volunteered for the position and created the duties for the temporary position. In addition, Mr. Gordon presents no evidence that this temporary job was an adverse action. He merely alleges it was created to allow PPL to ultimately get rid of him. Elsewhere in the complaint, however, he alleged the Public Utility Commission's investigation "may have been the motivation" for creating the new position. He admits he created the job duties of the new

---

[5] Although not in the second amended complaint, at the Rule 16 conference, counsel for Mr. Gordon stated Mr. Gordon had been transferred back to the Bethlehem Service Center.

position and admitted that he spoke with management about the possibility of making the position permanent. There is no indication this position impacted his tangible job benefits. He was not demoted, did not receive less pay, and PPL returned him to his prior position as a lineman leader when he asked to return.

Similarly, he presents no facts alleging that he was transferred to the Lehigh Service Center because of his age. Rather he states he was transferred because the Bethlehem employees felt harassed and threatened and because of his investigations during the temporary assignment. In addition, he does not allege this transfer was an adverse employment action, as no allegations suggest the transfer altered his compensation, terms, conditions, or privileges of employment.

Mr. Gordon alleges he received a "substandard review" but does not allege any facts from which it can be inferred that the review was because of his age. Moreover, he alleges no facts suggesting this review had a tangible effect on his employment. A negative performance evaluation is not an adverse employment action unless it has some "tangible effect upon the recipient's employment." Foster v. Ashcroft, 2006 WL 1995305, at *2 (D.N.J. July 14, 2006) (quoting Turner v. Gonzales, 421 F.3d 688, 696 (8th Cir. 2005)); see also Mickens v. Lower's Companies, Inc., 2009 WL 4911952. *9 (D.N.J. Dec. 14, 2009) (finding negative employment evaluation did not constitute an adverse action); Acosta v. Catholic Health Initiatives, Inc., 2003 WL 176978, *15 (finding negative performance review not an adverse action where it did not threaten

termination and the review expected the employee to make improvements). The complaint does not allege the evaluation resulted in a reduction in pay, a demotion, or even a lost bonus.

I will grant PPL's motion to dismiss Mr. Gordon's ADEA and PHRA disparate treatment claims. Mr. Gordon presents no facts to suggest age was a factor in any employment decision and no facts to suggest younger employees were treated more favorably. Similarly, no facts suggest Mr. Gordon suffered any adverse employment action. Mr. Gordon merely alleges the employment decisions, which did not impact his tangible employment benefits, were because of his age. This is not sufficient to state an age discrimination claim. The second amended complaint contains no facts that suggest Mr. Gordon suffered any adverse employment action, let alone an adverse employment action because of his age.

Mr. Gordon maintains the complaint should not be dismissed, but discovery should be allowed to determine whether a claim exists. The complaint, however, presents no facts to show discovery likely would lead to evidence of age discrimination. A complaint cannot survive solely because it states a plaintiff suffered discrimination because of his age.

B.  Retaliation

To state a prima facie case of ADEA and PHRA retaliation, the plaintiff must establish he engaged in protected conduct, he was subject to an adverse employment

action subsequent to his protected conduct, and a causal link exists between the protected conduct and the adverse employment action. See Barber v. CSC Distribution Servs., 68 F.3d 694, 701 (3d Cir. 1995).

To establish he suffered an adverse employment action, Mr. Gordon must show "a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting Rochon v. Gonzales, 438 F.3d. 1211, 1219 (D.C. Cir. 2006)). Determinations about whether acts are materially adverse or simply part of a normal workplace "depend on the totality of the circumstances." See Moore v. City of Phila., 461 F.3d 331, 346 (3d Cir. 2006) ("[A] discrimination analysis must concentrate not on individual incidents, but on the overall scenario." (citing Andrews v. City of Phila., 895 F.2d 1469, 1484 (3d Cir. 1990))).

Mr. Gordon alleges the 2009 evaluation rating him "substandard" was prepared as retaliation for filing his Charge of Discrimination with the EEOC in August 2008. The evaluation was administered in March 2010. Mr. Gordon presents no facts to support his assertion that the 2009 performance evaluation was prepared in retaliation for this EEOC charge, which was filed almost two years before the evaluation was prepared. A reasonable employee would not be dissuaded from engaging in protected activity because an employee received a "substandard" evaluation a year-and-a-half after engaging in

protected activity.[6]

Similarly, Mr. Gordon's allegation that he was "subjected to additional harassment" after he filed the Charge of Discrimination also fails to state a claim. Mr. Gordon does not allege any facts detailing this "additional harassment" or give any indication as to how this "additional harassment" impacted his employment.

I will grant PPL's motion to dismiss Mr. Gordon's ADEA and PHRA retaliation claims.

C.     Leave to Amend

Mr. Gordon seeks leave of the court to file a third amended complaint to "include any additional averments that the court may deem necessary to support the Plaintiff's Complaint."[7] PPL filed a motion to dismiss after Mr. Gordon filed his complaint, after he filed his amended complaint, and after he filed his second amended complaint. Mr. Gordon's response to PPL's motion to dismiss the second amended complaint contains no facts or additional averments that suggest he would be able to add facts to state an ADEA or PHRA cause of action. Mr. Gordon has had three attempts to file a complaint that states a claim for relief. He has failed to do so. I will not grant leave to amend the

---

[6] PPL attached a copy of the "substandard" review to its motion to dismiss the second amended complaint. This document was not considered in deciding this motion. Similarly, documents related to Mr. Gordon's EEOC charge were not considered.

[7] Mr. Gordon's response states he would seek leave to file a "second amended complaint." Mr. Gordon, however, already has filed a complaint, an amended complaint, and a second amended complaint.

13

complaint.

III. <u>CONCLUSION</u>

PPL's motion to dismiss Mr. Gordon's complaint will be granted. Mr. Gordon's second amended complaint will be dismissed with prejudice.

An appropriate order follows.